## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

LEX PHILLIPS, and
LEX PHILLIPS & ASSOCIATES, INC.,

      Plaintiffs,

v.

CARPET DIRECT CORPORATION
a Colorado Corporation,
GAYLE CROUCH, GREG JENSEN,
CHARLES OWENS, TODD KINSEY,

      Defendants.

JOINTLY AND SEVERALLY

Case No:

Hon.:

**PLAINTIFF DEMANDS A JURY**

Joni M. Fixel (P56712)
**Fixel and Nyeholt, PLLC**
4084 Okemos Rd., Ste B
Okemos, MI  48864
(517) 332-3390
jfixel@fixellawoffices.com

### COMPLAINT

NOW COME the Plaintiffs, by and through their attorney, Joni M. Fixel of Fixel and Nyeholt, PLLC, who state as follows in support of their Verified Complaint:

### Parties, Jurisdiction, and Venue

1.    This is an action to enforce rights arising out of Plaintiffs' business relationship with Defendant Carpet Direct Corporation, ("Defendant CDC"), pursuant to the Fair Labor Standards Act, U.S.C. Title 29 Sections 207 and 213 of the Act as amended, and under Colorado law.

2.     The Court may exercise subject matter jurisdiction over this claim pursuant to 28 USC § 1331 due to the claims at bar under federal law.  The Court may exercise pendent jurisdiction over the state law claims pursuant to 28 USC § 1367.

3.     Plaintiff LEX PHILLIPS is a permanent resident and domiciliary of the State of Colorado.

4.     Plaintiff LEX PHILLIPS & ASSOCIATES, INC. is a corporation organized under the law of the State of Colorado.

5.     Defendant CARPET DIRECT CORPORATION ("Defendant CDC") is a corporation founded and formed in the State of Colorado.  The organization licenses and sells rights to carry on business within the business model, name, infrastructure, and marketing established by the organization  all over the United States.  The Plaintiffs' claims in the instant matter are related to such sale and licensing of these rights.

6.     Defendant GAYLE CROUCH, a natural-born citizen of the United States, is one of the owners and Directors of the Board for Defendant Carpet Direct Corporation. Defendant Crouch is a resident of Colorado.  She has directed or, at very least, approved and ratified many of Defendant CDC's activities and policies, FLSA violations, and fraudulent and unlawful activities, that have given rise to the claims enumerated in the instant case.

7.     Defendant GREG JENSEN, a natural-born citizen of the United States, is one of the owners and Directors of the Board for Defendant Carpet Direct Corporation. Defendant Greg Jensen is a resident of Colorado.  He has directed or, at very least, approved and ratified many of Defendant CDC's activities and policies, FLSA violations, and

fraudulent and unlawful activities, that have given rise to the claims enumerated in the instant case.

8.    Defendant CHARLES OWENS, a natural-born citizen of the United States, resides in the state of Kansas. As a managerial level employee of Defendant CDC, Owens was at all times involved in, approved, ratified, and endorsed Defendant CDC's activities and policies, FLSA violations, and fraudulent and unlawful activities, that have given rise to the claims enumerated in the instant cases.  Owens has directed business activities, as described herein, toward the District of Colorado.

9.    Defendant TODD KINSEY, a natural-born citizen of the United States, resides in the state of Colorado. He is a so-called "broker" in the CDC organization involved in interference with Plaintiff's rights conferred by his business relationship with CDC.

10.    The Court may exercise personal jurisdiction over the Defendants because of their systematic and continuous direction of business activities into the State of Colorado and permanent business presence in this state.  In addition, the Court may exercise specific jurisdiction over the claims at bar because they stem from transactions that the defendants have knowingly engaged in within this state.

11.    Venue is properly laid in this judicial district pursuant to 28 USC § 1391(b)(2) because this is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated[.]" And, in the alternative, venue is properly laid in this district pursuant to 28 USC § 1391(b)(3) because it is a judicial district "in which any defendant is subject to the court's personal jurisdiction with respect to [this] action."

## FACTUAL BACKGROUND

Plaintiffs re-allege and reaffirm the previous numbered paragraphs as is restated herein

*The Carpet Direct business model*

12.   The Carpet Direct organization was founded in 1993 by Earl Crouch.   The organization seeks profits by selling floor coverings including carpet, hardwood, laminate, tile, and stone to end-user consumers.

13.   Carpet Direct also seeks profits from fees and commissions collected from persons in various states authorized to do business under the name Carpet Direct.

14.   So-called "brokers" who are given the right to sell as Carpet Direct are told that, for consideration given to Carpet Direct Corporation, they will end up the owners of their own business within Carpet Direct's business system.  Representations, such as "you will be in business for yourself, but not by yourself" are made.  Persons interested in entering into this business arrangement are told that they are forming a business they own, that can eventually be sold as an asset or left to their heirs.

15.   "Brokers" are paid commissions by Carpet Direct based on sales they complete. Carpet Direct's "brokers" are required to meet certain quantities of volume for sales. Failure to meet volume may result in deduction of paid "commissions."

16.   The assertion is that persons who enter into business arrangements with Carpet Direct in this manner will, eventually, become independent business owners, with rights of ownership.

17. Carpet Direct's business practices and fraud towards "brokers" is the subject of a lawsuit currently pending in the United States District Court for the District of Colorado: case number 16-CV-00616-PAB-KMT.

18. The instant Plaintiffs, and the plaintiffs to the corresponding matter, are former or current "brokers" of Carpet Direct and persons who purchased the right to operate Carpet Direct businesses resulting from these representations.

19. In fact, as shall be demonstrated herein, Carpet Direct's "brokers" possess none of the rights of a business owner. Carpet Direct retains authority to divest them of their position, without just compensation, at its whim. Carpet Direct, nevertheless, encouraged and *continues* to encourage these individuals to invest time and energy in the organization which they have, or stand to lose, at Carpet Direct's unbridled and capricious decision to terminate their employment.

20. Though they were told they would become business owners, Carpet Direct's "brokers" are nothing more improperly compensated employees of the organization.

21. Plaintiff herein seeks (1) remuneration commensurate with their work as employees, consistent with the FLSA and (2) compensation for the monies so wrongfully paid as capital contributions to Carpet Direct.

*Plaintiff Phillips' Interactions with CDC*

22. Plaintiff Lex Phillips became employed by Defendant CDC on or about summer of 1996.

23. During this period of time, Mr. Phillips attended a Carpet Direct broker meeting with Earl Crouch during which Crouch convinced him to open a business under the Carpet Direct business system in northern Colorado.

24. At one point during this meeting, Crouch told Plaintiff and others at this time that they would "eventually own" his own business, or words substantially to that effect.

25. Crouch, acting on Defendant CDC's behalf, represented to Plaintiff that he would have complete control and ownership of the business entity that he would create.

26. Crouch's representations to Plaintiff in this regard were false.

27. These promises and representations, and each of them, were false when Crouch made them. Crouch knew them to be false. However, he made them in an effort to maintain CDC's model and overhead structure.

28. Contrary to Crouch's representations, Carpet Direct retained significant control of the time, place, and manner in which Plaintiff conducted his business. Plaintiff was, in effect, an underpaid employee of Carpet Direct and not an owner of a business.

29. Based on these representations that he would own his own business Plaintiff decided to invest his time and resources to become a so-called "broker" for CDC.

30. Plaintiff incorporated the business entity, Plaintiff Lex Phillips & Associates, Inc., in order to proceed with the deal. If not for the false representations made to him, Phillips never would have organized this business entity.

31. Plaintiff worked hard to establish himself as a CDC "broker" in his territory. He would do the tear up, removal, and disposal of carpet for new customers without compensation in order to establish business relationships. This was usually at night, because he was required to make sales during the day.

32.   Plaintiff repeatedly drove to Denver to pick up carpet and deliver the product to the job site, again without compensation.  This function was performed in a rental box truck because there was not enough room in a pickup truck for carpet and pad.

33.   Plaintiff, on an ongoing basis, stored carpet and pads in his personal garage to deliver or have the customer pick up at a later date.  Because he could not afford a warehouse and forklift, he would use a 55 gallon drum and a solid round fence post for leverage.

34.   Plaintiff handled all sales and marketing and expenses for CDC within his territory.

35.   Plaintiff later established a warehouse for CDC in Windsor, Colorado.  CDC paid 1% of Plaintiff's volume of sales towards the warehouse.  However, if the warehouse expenses exceeded 1% of Plaintiff's volume for any given period, the difference was taken from Plaintiff's "commissions" paid by Carpet Direct.  However, if Plaintiff's volume was *over* warehouse expenses in a given period, it was not credited to later shortfalls in volume.

36.   Because of Defendant CDC's and its agents' fraudulent misrepresentations and/or misclassification of Plaintiff as an exempt employee and not an hourly employee, Plaintiff Lex Phillips has suffered damages by incurring and paying for company expenses from his rightful compensation.

37.   Plaintiff Phillips has been damaged by being misclassified as an exempt employee not an hourly employee.

38.   Plaintiffs Phillips and Lex Phillips Associates, Inc. have both lost profits and income due to CDC's breach of its contractual obligations to him by allowing a second

broker to operate in his territory, and the improper interference with his contractual agreement with CDC by Owens and Kinsey.

39.   Defendant CDC engaged in fraudulent and deceptive business practices towards end-users and consumers, and involved Plaintiff in this practice.

40.   Defendant CDC represented that the carpet pads each consumer would purchase were "virgin foam," which is an industry term denoting the quality of the carpet pads. Lex Phillips, based on CDC's assurances in this respect, represented to customers that CDC was the "only company using virgin foam."

41.   Defendant CDC knew or should have known at the time that the carpet pad that they were selling consumers nationwide was not "virgin foam" or near the quality of virgin foam.

42.   Defendant CDC instead charged the customers and consumers the price of the carpet pad made of virgin foam and ordered carpet pads that were made from recycled carpet pads and sent the same to the Plaintiffs which in turn went to the customers and consumers.

43.   Defendant CDC deliberately mislead and used deceptive trade practices to gain profit.

44.   Because of CDC's false statements, Plaintiff has been an unwitting accomplice in CDC's fraudulent business practices.

45.   Fortunately, none of Plaintiff's customers have sued him for his involvement in this fraud, but they may.  Plaintiff, and his business entities, were damaged as a result of their unwilling involvement in this fraud upon the public because of their exposure to potential liability.

46.  It was represented to Plaintiff Phillips that, in investing in the Carpet Direct system, he would have exclusive rights to operate as a Carpet Direct "broker" in a defined "territory" in Northern Colorado.

47.  The most recent version of the contract that Plaintiff signed, in fact, indicated that he had a "territory" consisting of the "counties of Larimer, Bould and Weld" and "[t]he municipalities of Ft. Collins, Loveland, Windsor, Greeley, Wellington, and Cheyenne, WY." **Ex. C,** 2/18/14 contract at ¶ 2.7.

48.  Indeed, earlier versions of the contract Phillips signed provided that his "sales territory" was "Ft. Collins, Loveland, Windsor, Greeley, Wellington and Cheyenne, WY" and "the counties of Larimer, Boulder, and Weld." **Ex. S,** 8/8/2007 contract at ¶ 3.2.

49.  Plaintiff established a warehouse in Windsor, Colorado in order to service his assigned "territory" for CDC.

50.  It was understood, through Crouch and other CDC personnel's representations, that Plaintiff would enjoy *exclusive* rights to sell for CDC in the "sales territory" identified above.

51.  At all times during the parties' course of dealing from 1996 through to the events described in this Complaint, Plaintiff was given the *exclusive* rights to the territory in question, and that there would be no other brokers within his territory.

52.  An implied provision of the agreement that Plaintiff signed was that he would have *exclusive* right to sell on CDC's behalf in the "territory" identified in the Contract. Otherwise, the contract would be void for lack of consideration.

53.  Defendant Todd Kinsey was, at one point in time, an employee of Plaintiff's brokerage.

54.   Kinsey was also a long time family friend of Defendant Charles Owens, Defendant CDC's Director of Sales and Marketing.

55.   In or about 2015, Defendant Kinsey complained to Owens that he was not making enough money selling under Plaintiff's CDC brokerage. In response, Owens established a CDC brokerage in Loveland, Colorado and assigned Defendant Kinsey as the "broker."

56.   Kinsey's new Loveland CDC brokerage was within Plaintiff's assigned territory. Kinsey's new warehouse, in fact, was *minutes* from Plaintiffs'.

57.   Defendant Owens was aware of Plaintiff's exclusive right to operate in this territory, and he was aware that allowing Kinsey to establish a CDC brokerage within Plaintiff's territory was contrary to his exclusive rights.

58.   Because of this knowledge, Defendant Owens took steps to conceal the violation of Plaintiff's contractual rights. CDC's procedure is to pay commissions for product being shipped into the Windsor warehouse. Kinsey was directed by Owens to transfer sales information onto generic forms with no city or zip code to disguise where the sales were being made, so he could be paid brokerage commissions for product delivered to the Windsor warehouse. This had the effect of denying Plaintiff brokerage commissions for sales within his territory that should have been paid to the Windsor warehouse.

59.   At one point, Defendant Owens promised to reimburse Plaintiff for 100% of the commissions that had been paid to Kinsey that should have been paid to the Windsor warehouse. But, he failed to ever do so.

60.   Plaintiff Phillips, at several points in time, has contacted CDC's managers and advised them that he believes that they have violated his contractual rights by allowing